IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RENIEL ADRIAN MEYLER | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. JKB-23-00082 |
| TOWN OF OCEAN CITY, *et al.*, | * | |
| Defendants. | * | |

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

## MEMORANDUM

In January 2023, Plaintiff Reniel Adrian Meyler filed a six-count Complaint against the
Mayor and City Council of Ocean City (the "City")[1] and two Ocean City police officers, Matthew
Foreman and Jonathan Norris (collectively, "Defendants"), alleging violations of the U.S.
Constitution under 42 U.S.C. § 1983 and violations of the Maryland Declaration of Rights and
Maryland common law. (ECF No. 1.)[2] The Complaint relates to an incident during the early
morning hours of July 1, 2022, when Ocean City police officers, including Officers Norris and
Foreman, responded to a noise complaint on Wicomico Street in Ocean City. (ECF No. 1 at 2.)
Officer Foreman responded on his patrol horse, Moose. (ECF No. 1 at 7.) Plaintiff, who was at
or near the scene of the noise complaint, allegedly made "clicking noises" that distracted Moose.
(*Id.*) After Plaintiff refused Officer Foreman's orders to stop making the noises, officers arrested
Plaintiff and brought him to the police station. (*Id.*) Plaintiff was detained for several hours and
then released on bail. (*Id.*) He was subsequently charged with criminal failure to obey a lawful

---

[1] The Complaint referred to the City as "Town of Ocean City," (ECF No. 1 at 1), but in its answer, the City states that
the "Town of Ocean City" is "a non-entity," and that Plaintiff's characterization of the City's legal name is
"improper[]." (ECF No. 7 at 1.)
[2] The pages in the Complaint appear to have been filed out of order. For clarity, in this Memorandum, the Court will
refer only to the ECF page number, not the Complaint's original pagination.

order of police and interfering with a police animal, but the charges were dropped the following

month. (*Id.*) Plaintiff alleges that this incident caused him physical injuries, severe emotional

distress, and caused him to incur various expenses. (*Id.* at 8.) He seeks a total of $8 million in

compensatory damages and $28 million in punitive damages.

Now pending before the Court are two Motions to Compel Discovery, one filed by Plaintiff

and one by Defendants. Plaintiff's Motion to Compel (ECF No. 17) seeks to compel Defendants

to answer various interrogatories and requests for production (RFPs). The requests largely involve

information about prior complaints against the Defendants pertaining to improper arrests and

discrimination, and financial and personal information about Officers Norris and Foreman.

Defendants' Motion to Compel (ECF No. 19) asks this Court to order Plaintiff to undergo a

psychiatric independent medical evaluation (IME). Both motions are fully briefed and no hearing

is necessary. *See* Local Rule 105(6) (D. Md. 2023). For the reasons discussed below, the Court

will grant in part and deny in part Plaintiff's Motion to Compel (ECF No. 17), and grant

Defendants' Motion to Compel. (ECF No. 19.)

## I.   PLAINTIFF'S MOTION TO COMPEL

### A. Legal Standard

District courts have broad discretion in deciding whether to grant a motion to compel

discovery. *Stone v. Trump*, 356 F. Supp. 3d 505, 513 (D. Md. 2018). Under the Federal Rules of

Civil Procedure, "[a] party seeking discovery may move for an order compelling an answer,

designation, production, or inspection." Fed. R. Civ. P. 37(A)(3)(B). A party may discover any

nonprivileged information that is relevant to any party's claim or defense, but "all permissible

discovery must be measured against the yardstick of proportionality." *Maxtena, Inc. v. Marks*,

289 F.R.D. 427, 434 (D. Md. 2012) (quoting *Victor Stanley, Inc. v. Creative Pipe*, 269 F.R.D. 497,

523 (D. Md. 2010)). The considerations for proportionality include the importance of the issues

at stake, the amount in controversy, the relative access of the parties to the information, the parties'

resources, the importance of the discovery in resolving the issues, and whether the burden or

expense of discovery outweighs its benefit. Fed. R. Civ. P. 26(b)(1). "The burden is on the party

resisting discovery to explain specifically why its objections, including those based on irrelevance,

are proper given the broad and liberal construction of federal discovery rules." *Desrosiers v. MAG*

*Indus. Automation Sys., LLC,* 675 F. Supp. 2d 598, 601 (D. Md. 2009).

### B. Compliance with Local Rule 104.8

As a threshold issue, the Court must address Defendants' argument that the Court should

deny Plaintiff's Motion to Compel on the grounds that Plaintiff failed to comply with Local Rule

104.8. (ECF No. 18-1 at 6–7.) That Rule sets forth a variety of procedural requirements that the

parties must meet before the Court will consider a motion to compel. Local Rule 104.8 (D. Md.

2023). As relevant here, the Rule provides that, after all documents relating to the motion have

been served, counsel for the parties must confer and attempt to resolve their dispute before the

Court will consider the motion. *Id.*

Here, the parties conferred by telephone on June 30, 2023, after Plaintiff served his Motion

to Compel but *before* Defendant had responded or Plaintiff had replied. (ECF No. 18-1 at 6–7.)

Thus, the conference improperly occurred before all papers relating to the Motion had been served.

Defendants argue that Plaintiff's Motion is improper and should be denied because of this

procedural violation. (*Id.*)

In response, Plaintiff concedes that he "did not fully comply with Local Rule 104.8," but

argues that he nevertheless was in substantial compliance. (ECF No. 20.) Additionally, Plaintiff

argues that "it is a more practical and judicious use of the Court's time for the Court to consider

3

Plaintiff's Motion to Compel on the merits at this time and resolve the discovery disputes between the parties." (*Id.* at 2.)[3]

The Court will not deny Plaintiff's Motion to Compel on the basis of this procedural violation. "Failure to comply with Local Rule 104.8 does not per se require dismissal of a party's motion to compel." *Chavis v. Plumbers & Steamfitters Loc. 486 Pension Plan*, Civ. No. 1:17-02729-ELH, 2019 WL 4879015, at *4 (D. Md. Oct. 3, 2019). Furthermore, the Court has the authority to suspend any provision of the Local Rules for good cause. Local Rule 604 (D. Md. 2023). Here, the Court finds good cause. The purpose of Local Rule 104.8 is to promote judicial economy by enlisting Court resources in resolving discovery disputes only after the parties have exhausted all efforts to resolve the dispute themselves. In this case, the Motion is fully briefed, and the two sides are clearly unable to resolve the dispute themselves after having conferred. Dismissing the Motion on procedural grounds would lead to pointless duplicative work for the parties and for the Court, as the Motion would almost inevitably return here later, after what would surely be a perfunctory second conference.

Having concluded that it is proper to consider the merits of Plaintiff's Motion, the Court will turn to each of Plaintiff's requests in turn.

### C. Discovery requests on the City

#### 1. *Interrogatories 17 and 18*

The text of these interrogatories is as follows:

Identify any and all complaints of false arrest, false imprisonment, malicious prosecution, battery, assault or violations of 42 U.S.C. § 1983 that have been made against you based on the conduct of any Ocean City Police Department's Police Officers, by stating the name, address and telephone number of each Police Officer complained against, the date of the

---

[3] Plaintiff also argues that with the discovery deadline rapidly approaching on October 24, 2023, waiting until all documents relating to the motion to compel had been filed would have pushed things too close to the deadline. (*Id.*) This argument no longer has any force, because the Court has since granted a Joint Motion to Modify the Scheduling Order and extended the discovery deadline to January 22, 2024. (ECF No. 24.)

complaint, the name, address and telephone number of the person who made the complaint and the current status of each complaint.

Identify all civil suits, and any other judicial or administrative complaint against Defendant for false arrest, false imprisonment, malicious prosecution, battery, assault violations of 42 U.S.C. § 1983 that have been made against you based on the conduct of any Ocean City Police Department's Police Officers, including stating the forum of the case, the basis, and the charge and/or case numbers.

(ECF No. 18-2 at 11.) After Defendants objected that these requests were overbroad, Plaintiff agreed to limit the time duration to ten years from the date of the July 2022 incident. (ECF No. 17-1 at 4.) Even with this durational limitation, Defendants maintain their objection that the request is overbroad and that prior complaints against the City, "should any exist, are of no relevance to Plaintiff's specific claim against Defendants." (ECF No. 17-3 at 2.)

The Court will deny the Motion to Compel as it relates to these Interrogatories. Plaintiff has not alleged that the wrongs committed against him were part of the City's policy or custom of violations. *See Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978). Indeed, Plaintiff's Section 1983 claim names only the Officers as defendants, not the City. (ECF No. 1 at 8.) On the whole, the Complaint appears focused solely on the July 2022 incident, aside—arguably—from a single, conclusory statement in the recitation of Count II, Violation of Maryland Declaration of Rights, that the Defendant Officers acted "under color of statutes, customs and usages of the State of Maryland." (ECF No. 1 at 3.) Because the Complaint is focused only on Plaintiff's allegedly wrongful arrest and subsequent prosecution, permitting discovery of complaints against other officers for other alleged wrongful acts will not lead to any relevant, let alone admissible, information in this case. Additionally, even if the discovery request might conceivably lead to relevant information, the burden of producing documentation of every complaint, even if limited to the past ten years, is disproportionate to any relevant information that the request might yield.

### 2. *RFP 14*

All documents relating to any complaint of discrimination on the basis of race, color and national origin by any person to you against Defendant Foreman and Defendant Norris. (ECF No. 18-5 at 5.)

The Court will grant in part the Motion to Compel as it relates to this RFP. In his recitation

of Count I, Deprivation of U.S. Constitutional Rights under 42 U.S.C. § 1983, Plaintiff alleges that

"he was subjected to the illegal arrest because Plaintiff is a black male." (ECF No. 1 at 3.) Past

incidents of racial discrimination by the Defendant Officers, should any exist, may be relevant to

the Officers' state of mind, and might be admissible for impeachment or another purpose. *See*

Fed. R. Evid. 404. Furthermore, the RFP is not overly burdensome, as it only seeks the production

of documents pertaining to two individual officers. However, as currently formulated, the RFP is

overbroad. The mere existence of a complaint against one of the Officers is not probative of

discriminatory intent. Thus, the Court will only order the City to produce evidence of complaints

alleging race, color, or nationality discrimination against the Officers that were sustained, either

by a judgment against one of the Officers, any other finding or admission of fault, or by a

settlement with any terms favorable to a plaintiff. Additionally, the RFP will be limited to

complaints in the 10 years preceding the July 2022 incident.

### 3. *RFP 15*

The complete files relating to Defendant Foreman and Defendant Norris, including but not limited to their personnel file, record pertaining to their duties, salary, promotions, evaluations, discipline and benefits. (ECF No. 18-5 at 5.)

Plaintiff argues that the personnel files are "generally discoverable "and are likely to lead

to relevant and admissible evidence, such as whether the officers "have a history of similar

misconduct." (ECF No. 17-1 at 5–6.) Defendant argues that the "personnel files are not relevant

to Plaintiff's particular claims." (ECF No. 17-3 at 4.) Defendants oppose Plaintiff's attempt to "go fishing" through these records. (ECF No. 18-1 at 10.)

The Court will grant in part the Motion to Compel as it relates to this RFP. Plaintiffs have not provided this Court with any clear explanation of how information about the Defendant Officers' salary, promotion, evaluations, or benefits would be relevant to this case. Thus, the Court will not order production of documents relating to these matters. However, instances of disciplinary action sustained against either Officer could be relevant to Plaintiff's claims. Additionally, the burden on the City to produce these records will not be disproportionate, since the records pertain to only two officers. The Court will limit production to disciplinary actions sustained against either officer within 10 years prior to the date of the July 2022 incident.

### 4.  *RFPs 16 and 17*

All documents regarding complaints of discrimination on the basis of race, color and or national origin against Ocean City Police officers by individuals arrested by Ocean City Police Officers, not including Defendant Foreman and Defendant Norris.

All documents regarding any claims filed in any state or federal courts against you concerning any discrimination on the basis of race, color and national origin by Ocean City Police officers by individuals arrested by Ocean City Police officers. (ECF No. 18-5 at 5.)

The Court will deny the Motion to Compel as it relates to these RFPs. These RFPs share a similar defect with Interrogatories 16 and 17, discussed above. Plaintiff's only discrimination allegation is in his recitation of Count I, his Section 1983 claim. (ECF No. 1 at 3.) And as mentioned above, this Count is directed only against the Officers, not against the City. (*Id.*) Since Plaintiff has not alleged a *Monell* claim, and since the City is not even a defendant as to Count I, it is not clear how complaints about racial discrimination against other officers in other incidents could be relevant. And in any event, the burden on the City to search for and produce such documentation would likely be disproportionate to any possible benefit.

7

### D. Discovery Requests on Officers Foreman and Norris

#### 1. *Interrogatory 10 on Norris*

This Interrogatory asks Officer Norris to "describe in detail the events leading to Plaintiff's arrest forming the basis of this action." (ECF No. 18-4 at 8.)  Plaintiff objects to the fact that, in his response to this Interrogatory, Norris simply quoted verbatim Officer Foreman's police report, rather than providing his own account of events based on his own personal knowledge. (*See* ECF No. 18-4 at 8.)  Defendants argue that "[t]he fact that Defendant Norris's response is consistent with that of Defendant Foreman is of no consequence." (ECF No. 17-3 at 8.)  Further, Defendant argues that Norris's answer "is complete and truthful and is not subject to being altered based on Plaintiff's demand that it be stated differently by Norris." (ECF No. 18-1 at 10–11.)

The Court will grant the Motion to Compel as it relates to this Interrogatory.  Norris's description of the July 2022 incident is plainly relevant, because he was both an eyewitness and a participant in the events giving rise to Plaintiff's arrest.  Furthermore, asking him to provide a description of the incident is proportional to the needs of the case, given the high relevance of his account and the low burden associated with providing a description.  Officer Norris must respond in his own words or—at a minimum—expressly state that he adopts Officer Foreman's statement as his own.  Because he did neither, his response was inadequate.  Thus, the Court will grant the Motion to Compel insofar as it seeks to require Officer Norris to respond to Interrogatory 10.

#### 2. *Interrogatories 15 and 16 on Foreman and Norris, respectively*

Interrogatory 15 on Foreman, and Interrogatory 16 on Norris, ask:

> Identify any complaint of false arrest, false imprisonment, malicious prosecution, battery, assault or violations of 42 U.S.C. § 1983 that have been made against you by stating the date of the complaint, the name, address and telephone number of the person who made the complaint against you and the current status of each complaint. (ECF No. 18-3 at 10; ECF No. 18-4 at 10.)

Defendants argue that prior complaints against Foreman and Norris are not relevant and that the request is vague. (*Id.*) Plaintiff replies that the Interrogatories are not vague and seek "very relevant" information. (ECF No. 17-3 at 6.)

The Court will grant in part the Motion as it relates to these Interrogatories. The request does not appear vague, and prior incidents of racial discrimination or other misconduct by the Officers may be relevant for impeachment or another purpose. *See* Fed. R. Evid. 404. However, the Interrogatories as currently articulated are overbroad. As with RFP 14 against the City, the Court will limit the request to complaints that were sustained, either by a judgment against one of the Officers, any other finding or admission of fault, or by a settlement with any terms favorable to a plaintiff. Additionally, the Defendants need only identify complaints made within 10 years prior to the July 2022 incident.

### 3. *Interrogatory 16 and 17 on Foreman and Norris, respectively*

Identify all civil suits, and any other judicial or administrative complaint against you for false arrest, false imprisonment, malicious prosecution, battery, assault violations of 42 U.S.C. § 1983 including stating the forum of the case, the basis, and the charge and/or case numbers. (ECF No. 18-4 at 10.)

Plaintiff included this Interrogatory in their list of interrogatories he asks the Court to compel, (ECF No. 17-1 at 6–7.), but it appears that Defendants Foreman and Norris answered this Interrogatory by stating that there are no such suits. (ECF No. 18-3 at 10; 18-4 at 10.) Although both Officers have answered, both still maintain their objections to the request. (*Id.*) Because the Officers have responded adequately, the Court will deny as moot the Motion to Compel as it relates to Interrogatories 16 and 17 on the Officers.

### 4. *Requests relating to the Officers' personal finances*

Finally, there is a large category of requests seeking financial information about both Officers, including their bank accounts, real property holdings, personal property, investment

accounts, and net worth. This includes Interrogatories 21, 22, 23, and 24 on both Officers, (*see* ECF No. 18-3 at 12–13; ECF No. 18-4 at 11–12), and RFPs 10, 11, 12, 13, 14, 15, and 16 on both Officers. (*See* ECF No. 18-6 at 3–4; ECF No. 18-7 at 3–4.)

Plaintiff argues that he is seeking punitive damages against these Defendants, and that "[i]t is well established that when punitive damages are being sought by the plaintiff, pretrial discovery of financial information of the defendant is generally permitted." (ECF No. 17-3 at 7.) Defendants counter that Plaintiff's "conclusory allegation of 'actual malice'" is not enough to sustain a punitive damages claim. (ECF No.18-1 at 10.)

The Court will deny the Motion with respect to these Interrogatories and RFPs without prejudice. Evidence of a defendant's finances is relevant to a claim for punitive damages, but the Court is not mechanically required to order discovery on a party's "mere inclusion of a bald demand for punitive damages in a pleading." *Moore v. DAN Holdings, Inc.*, No. 1:12CV503, 2013 WL 1833557, at *14 (M.D.N.C. Apr. 30, 2013). The Court may entertain this request anew at a later point in this litigation, if Plaintiff's claim for punitive damages survives an anticipated summary judgment motion. *See Bost v. Wexford Health Sources, Inc.*, Civ. No. ELH-15-3278, 2016 WL 11641932, at *2 (D. Md. Nov. 9, 2016) (deferring ruling on a motion to compel discovery of defendant's financial information related to a claim for punitive damages until after resolution of dispositive motions).

## II.   DEFENDANTS' MOTION TO COMPEL

Defendants move for an Order compelling Plaintiff to undergo a psychiatric IME. (ECF No. 19 at 1.) Defendants note that Plaintiff has retained a psychiatrist whom he intends to call at trial to testify regarding Plaintiff's mental state. (ECF No. 19 at 3.) Defendants argue that if they are unable to obtain an IME of Plaintiff, then they will be prejudiced because Plaintiff's

psychiatrist would be the only expert testifying at trial as to Plaintiff's mental and emotional damages. (ECF No. 25 at 4.)

## A. Background

Plaintiff alleges that the July 2022 incident caused him "emotional distress" and "severe mental anguish" (ECF No. 1 at 4, 8, 9.) These emotional harms form the vast majority of the $8 million in compensatory damages that Plaintiff seeks from Defendants. According to Defendants, when asked to itemize the categories of compensatory damages claimed, Plaintiff only itemized $6,200 in damages other than the category of mental or emotional damages, implying that well over 99% of his claimed damages result from mental or emotional distress. (ECF No. 25 at 2.) To support these claims for mental and emotional damages, Plaintiff has retained a psychiatrist, Dr. Theodore C. Osuala, whom Plaintiff intends to call at trial. (*See* ECF No. 19 at 2; ECF No. 23 at 2.)

After Plaintiff identified his psychiatrist and produced Dr. Osuala's written report, Defendants asked for Plaintiff's cooperation in arranging for Plaintiff to undergo an IME with Defendants' psychiatric expert. (ECF No. 19 at 3.) Plaintiff refused to consent to an IME, but stipulated that he would consent to an IME "after the disposition of anticipated Defendants' motion for summary judgment." (*Id.*) Defendants then filed the instant Motion.[4]

## B. Legal Standard

The Court may order a party whose mental or physical condition is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner. Fed. R. Civ. P.

---

[4] The Court observes that that Defendants did not file a Certificate indicating that the parties held a conference regarding this Motion, as is required by Local Rules 104.7 and 104.8. Plaintiff does not press this issue and the Court declines to deny the Motion on this ground. However, the Court observes that no party in this case has successfully complied with the Local Rules regarding Motions to Compel. The Court expects full compliance with the Local Rules going forward.

35(a)(1). The Court's order may only be made on motion for good cause and with notice to the person to be examined. *Id.* 35(a)(2)(A). Additionally, the order "must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." *Id.* 35(a)(2)(B).

The fact that a plaintiff has alleged mental or emotional injury as part of their damages claim does not automatically mean that their mental condition is "in controversy" for the purposes of Rule 35. *Ricks v. Abbott Labs.*, 198 F.R.D. 647, 648–49 (D. Md. 2001). But the Court may find a plaintiff's mental condition to be in controversy if one or more of the following factors is present:

> (1) plaintiff has asserted a specific cause of action for intentional or negligent infliction of emotional distress; (2) plaintiff has alleged a specific mental or psychiatric injury or disorder; (3) plaintiff has claimed unusually severe emotional distress; (4) plaintiff has offered expert testimony in support of her claim for emotional distress damages; and (5) plaintiff concedes that her mental condition is "in controversy" within the meaning of [Rule] 35(a)."

*Id.* (quoting *Fox v. Gates Corp.*, 179 F.R.D. 303, 307 (D. Colo. 1998)). Furthermore, the good cause requirement means that the movant must show something more than the "mere relevance" of the examination to the issues in the case. *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964).

### C. Analysis

The Court finds that Plaintiff's mental state is in controversy and that Defendants have shown good cause for ordering him to undergo a mental evaluation. Several of the *Ricks* factors in support of ordering an examination are present. Plaintiff conceded that his mental condition is in controversy in this case. (ECF No. 23 at 1.) Plaintiff plans to offer expert testimony on his mental state in support of his damages claim. (*Id.* at 2.) And Plaintiff alleges that he has suffered "severe mental anguish" (ECF No. 1 at 9), which Plaintiff values at over $1.99 million, over 99% of at least one of his claims for compensatory damages. (ECF No. 25 at 2.) The alleged severity

12

of Plaintiff's emotional distress, and the high dollar amount that Plaintiff has attached to this distress, shows that he is alleging "emotional distress beyond the 'garden variety' sort that 'everyone experiences.'" *Nicholson v. Balt. Police Dep't*, Civ. No. DKC 20-3146, 2022 WL 1104575, at *2 (D. Md. Apr. 13, 2022) (quoting *Hughley v. Balt. Cnty. Gov't*, Civ. No. 19-cv-1578, 2021 WL 6655870, at *2 (D.Md. May 13, 2021)). Thus, the question of the nature and extent of Plaintiff's mental damages is not "mere[ly] relevan[t]," *Schlagenhauf*, 379 U.S. at 118, but is absolutely central to the case.

Furthermore, the Court finds that Plaintiff's arguments against ordering an IME at this time are unconvincing. First, Plaintiff contends that Defendant's Motion is procedurally improper because Defendants failed to specify the time, place, manner, conditions and scope of the examination or the person who would perform it. (ECF No. 23 at 3.) But these requirements pertain to a Court order granting a motion to compel a mental evaluation, not to a party's briefs. *See* Fed. R. Civ. P. 35(a)(2)(B). In any event, Defendants in their Reply brief have identified a proposed psychiatrist, Dr. Aaron R. Noonberg, and provided the details of the proposed examination. (ECF No. 25 at 6.)

Second, Plaintiff states that ordering an evaluation would implicate the "privacy and safety concerns of the Plaintiff." (ECF No. 23 at 3.) The Court does not doubt the sincerity of Plaintiff's concerns about being examined by a mental health professional chosen by an opposing party. But an examination by an opponent's expert is one of the many burdens of litigation that a plaintiff assumes the risk of undergoing when he files a claim that puts his mental state at issue. Furthermore, any privacy concerns are undercut by the fact that Plaintiff has already shared his own psychiatrist's report with Defendants. (ECF No. 23 at 2.)

Third, Plaintiff's proposal to defer the IME until after resolution of summary judgment is impracticable. If the Court followed Plaintiff's proposal, then at summary judgment the Court would have to decide which material facts were genuinely disputed while the record on one of the most important factual issues in the case remained incomplete. *Cf. Goodman v. Diggs*, 986 F. 3d 493, 500 (4th Cir. 2021) (explaining that summary judgment is "premature" when there are outstanding discovery requests).

Finally, the Court's Amended Scheduling Order sets the deadline to complete discovery as January 22, 2024. The Order also sets Defendant's expert disclosure deadline as December 6, 2024. (ECF No. 24.) Delaying an IME until after summary judgment would be inconsistent with the Scheduling Order, which can be amended only on a showing of good cause. *See* Fed. R. Civ. P. 16(b)(4). Plaintiff has not shown good cause for delay.

## III.    CONCLUSION

For the reasons stated above, the Court will grant in part and deny in part Plaintiff's Motion to Compel (ECF No. 17), and grant Defendant's Motion to Compel. (ECF No. 19.) A separate Order will issue.[5]


DATED this /4 day of September, 2023.

<div style="margin-left:auto">

BY THE COURT:

James K. Bredar
Chief Judge

</div>

---

[5] Under Federal Rule of Civil Procedure 37(a)(5)(A), if the Court grants a Motion to Compel, it must, after a hearing, award attorney's fees for costs associated with the Motion to the prevailing party, unless, *inter alia*, the nondisclosure was substantially justified or "other circumstances make an award of expenses unjust." Here, the Court is granting, at least in part, both Motions to Compel. Furthermore, the Court finds that neither side opposed the opposing party or parties' Motion in bad faith. Under these circumstances, the Court finds that ordering attorney's fees would be unjust. Instead, each party shall bear their own costs associated with the Motions.